Arturo MATAMOROS, Plaintiff,

v.

**YSLETA INDEPENDENT SCHOOL DISTRICT, Defendant.**

**No. EP–11–CV–203–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 9, 2012.

Enrique Chavez, Jr., Raymond J. Baeza, Chavez Law Firm, El Paso, TX, for Plaintiff.

Francisco Javier Ortega, Bonnie Ann Hungerford, Rosemary M. Marin, Scott Hulse, PC, El Paso, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Plaintiff Arturo Matamoros's (Matamoros) "Partial Motion for Summary Judgment" [1] (ECF No. 20) [hereinafter Matamoros's Motion], filed on October 4, 2011; Defendant Ysleta Independent School District's (YISD) "Response to Plaintiff's Motion for Partial Summary Judgment" (ECF No. 21), filed on October 12, 2011; Matamoros's "Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment" (ECF No. 22), filed on October 18, 2011; YISD's "Sur–Reply to Plaintiff's Motion for Partial Summary Judgment" (ECF No. 25), filed on October 27, 2011; YISD's "Cross–Motion for Summary Judgment" (ECF No. 30) [hereinafter YISD's Motion], filed on December 16, 2011; Matamoros's "Response to Defendant's Motion for Summary Judgment" (ECF No. 36),[2] filed on January 4, 2012; and YISD's "Reply to Plaintiff's Response to Defen-

dant's Cross–Motion for Summary Judgment" (ECF No. 33) [hereinafter YISD's Reply], filed on January 3, 2012 in the above-captioned cause. After due consideration, the Court is of the opinion that Matamoros's Motion should be granted and that YISD's Motion should be denied for the reasons that follow.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 2011, Matamoros filed suit in the 171st Judicial District Court of El Paso County, Texas. Notice of Removal Ex. A–9 [hereinafter Original Petition], May 17, 2011, ECF No. 1. After YISD removed the case to the Court, Matamoros filed his "First Amended Complaint" (ECF No. 18) on September 22, 2011. Therein, he claims that YISD violated the Family Medical Leave Act (FMLA) by not restoring him "to the position of employment he held when his leave under the FMLA, from September 27, 2010[to] November 18, 2010, [completed,] in violation of 29 U.S.C. § 2615(a)(1)." First Am. Compl. 2.

By way of background, YISD asserts that it originally "hired Matamoros as a substitute custodian for maintenance services" and, soon thereafter, changed his status to "full-time custodian/gardener." YISD's Mot. 1–2. While working in this capacity, YISD alleges that Matamoros:

received several written and oral warnings for, among other things:

1. destruction of district property

2. improper use of a tool

3. lack of cooperation/teamwork and failure to follow instructions

---

1. Although Matamoros terms his motion a "partial motion," the Court construes it, instead, as a motion for *partial* summary judgment.

2. Although Matamoros originally filed his "Response to Defendant's Motion for Summary Judgment" (ECF No. 32) on December 28, 2011, the Court only considers his subsequently-filed corrected response.

4. substandard work and for 'misrepresenting facts'

5. blowing debris under a school door

6. failure to report absences

7. using his phone during work hours

8. losing two shovels in a [ninety]-day time frame[.]

YISD's Mot. 2. After an annual evaluation filled with "several 'unsatisfactory' ratings, ... Matamoros'[s] supervisor recommended his suspension from work." *Id.* Matamoros was suspended for three days and was informed that his "next infraction [would] result in [his] immediate termination from" YISD. *Id.* at 2–3. YISD further represents that, approximately one month after Matamoros's suspension, he submitted falsified timesheets, "reflecting incorrect hours worked during th[e] time period." *Id.* at 3. YISD states:

> Consequently, on September 27, 2010, Matamoros'[s] supervisor gave him another disciplinary report and recommended Matamoros'[s] termination for the following reasons:
>
> 1. Leaving without permission
> 2. Violation of policies/procedures
> 3. Failure to follow instructions
> 4. Failure to work assigned shift
> 5. Violation of safety rules
> 6. Disobeying directives
> 7. Leaving/falsification of records[.]

*Id.* at 3–4. "[A]fter issuing its disciplinary report, [YISD] advised Matamoros in writing of its intent to terminate hi[s employment] pending only final approval from YISD's Director of Support Personnel." *Id.* at 4.

YISD alleges that, the day after receiving the termination letter and "while the termination was pending final approval, Matamoros immediately requested FMLA leave for stress, which [YISD] granted."

*Id.* Matamoros then took FMLA leave from September 28, 2010 to November 18, 2010. *Id.* at 5. On November 18, 2010, "Matamoros ... provided [YISD's] Department of Risk Management his Return to Duty Request from his physician." *Id.* YISD asserts that it instructed Matamoros on the additional steps that he had to take to "receive his work assignment for the following day," steps with which Matamoros failed to comply.[3] *Id.* Therefore, instead of reinstating Matamoros, YISD continued its efforts to terminate Matamoros's employment, which it did on November 29, 2010. *Id.* at 7. As a result of these actions, Matamoros filed his Original Petition, which was removed on May 17, 2011. ECF No. 1.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir.1994) (quoting *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990)). If the moving party has satisfied its initial burden, the non-movant must then come forward

---

3. *See infra* Part III.C. and note 10.

with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). While a court will resolve factual controversies or disputes in the non-movant's favor, it must do so "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Natl. Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

Both parties agree that Matamoros took qualified FMLA leave. Matamoros's Mot. 6; YISD's Mot. 4. And, both parties agree that the FMLA applies in this case. *See* YISD's Mot. 13–15 (analyzing the statutory rights of FMLA); Matamoros's Mot. 2–5 (providing analysis on the FMLA). However, the parties dispute whether or not the FMLA contains a right to restoration. On the one hand, Matamoros argues that FMLA provides employees, who take FMLA leave, the right to be restored to the position they maintained prior to taking FMLA leave.[4] YISD, on the other hand, maintains that the FMLA "provides the employee with only a *limited* right to reinstatement." YISD's Mot. 13 (emphasis in original) (citing *Sanders v. City of Newport,* 657 F.3d 772, 778 (9th Cir.2011)).

### A. Matamoros's Argument

Matamoros explains that "[t]he FMLA has two different major enforcement components: the prescriptive, or entitlement provision at section 261[4](a)(1), and the proscriptive component at section 2615(a)(2)." Matamoros's Mot. 1. The prescriptive component, section 2614(a)(1), provides that "any eligible employee who takes [FMLA] leave . . . shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1) (2006). The proscriptive component, section 2615(a)(2), declares it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. § 2615(a)(2). At issue in the instant cause is the prescriptive component. Matamoros explains:

> The prescriptive provision ensures that an employee receives his or her entitlement under the [FMLA] by prohibiting interference with or restraint or denial of FMLA-protected rights without regard to whether an employer actually intended to interfere, restrain[,] or deny those rights; if a defendant violates a portion of the [FMLA] by, for instance, failing to reinstate someone after FMLA-protected leave, then such is a denial of an FMLA-protected right and the employer is strictly liable. By contrast, the proscriptive aspect of the [FMLA] does require proof of intent to discriminate.

Matamoros's Mot. 1–2.

Matamoros grounds his claim, that the prescriptive component is blind to intent, in the decision of the Fifth Circuit Court of

---

**4.** Matamoros states that "[t]he FMLA provides for strict liability for violations of 29 U.S.C. § 2615(a)(1) and, thereby, an employ-

er's *intent* to interfere with, restrain[,] or deny is irrelevant." Matamoros's Mot. 3.

Appeals in *Nero v. Industrial Molding Corporation*, 167 F.3d 921 (5th Cir.1999). There, the court considered an FMLA prescriptive claim by Michael Nero, the plaintiff, who was not restored to his position after completing FMLA leave. At the trial court level, the jury determined that the employer made the decision to terminate Nero's employment *after* he took FMLA leave. *Id.* at 926. The Fifth Circuit affirmed the judgment by first distinguishing between the prescriptive and proscriptive components of the FMLA, much as Matamoros has done here. In reference to the prescriptive component, the Fifth Circuit stated that "[b]ecause the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Id.* at 927 (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998)). Matamoros reads this language in *Nero* as holding that the FMLA's prescriptive component ignores "the intent of the employer." Matamoros's Mot. 3.

Matamoros further substantiates his claim by citing to the Fifth Circuit's Pattern Jury Instructions. There, in reference to the FMLA's prescriptive component, the jury instruction states, "[I]t does not matter whether Defendant intended to violate the FMLA. If Defendant denied Plaintiff a right to which [he] was entitled under the FMLA, then Defendant is liable, and Plaintiff should prevail." Fifth Circuit, PATTERN JURY INSTRUCTIONS (CIVIL CASES) [hereinafter Jury Instructions] 11.10.2(B)(10) (West 2009). Recursively, this specific jury instruction also relies on *Nero. See id.* n. 13 (citing *Nero* ).

In sum, Matamoros holds stalwartly to his assertion that intent is irrelevant for the prescriptive component of the FMLA. This position leads to the conclusion that an employer is legally required to restore an employee to his previous position after returning from FMLA leave. If this characterization is accurate, then summary judgment is proper on Matamoros's behalf. However, YISD disputes such a conclusion.

## B. YISD's Counterargument

YISD contends that the FMLA's prescriptive component does not turn a blind eye to the employer's intent. In cadence similar to Matamoros, YISD turns to the Fifth Circuit's Pattern Jury Instructions, though to a different section; this one states:

> Plaintiff's exercise of FMLA leave rights does not entitle [him] to greater rights to continued employment or employment benefits than any of [his] fellow employees who did not exercise FMLA leave rights. Thus, Defendant was not required to ... restore Plaintiff to the same or an equivalent position if Defendant proves Plaintiff's employment ... would have ended even if Plaintiff had not exercised [his] FMLA leave rights.

Jury Instructions 11.10.2(B)(8). YISD explains that these instructions "allow an employer to deny reinstatement *if* it can prove that a plaintiff's employment would have ended regardless of his FMLA leave." YISD's Mot. 18 (emphasis in original).

YISD continues its counter attack by arguing that Matamoros's "reliance on *Nero* ... is misplaced" because its holding is inapposite to the issue in this case. YISD's Mot. 15. YISD argues that "*Nero* does not mention—much less endorse—the finding of strict liability. To the contrary, *Nero* only prevents an employer from using evidence concerning its treatment of other similarly-situated employees to disprove its intent to interfere with plaintiff's FMLA rights.... That is all." YISD's Mot. 16–17.[5] Presumably, YISD refers to

**5.** YISD also argues that *Nero* is factually dis- tinguishable from the instant case. In *Nero,*

the language in *Nero* where the Fifth Circuit stated that "[a]n employer must honor entitlements, and cannot defend by arguing that it treated all employees identically." *Nero*, 167 F.3d at 927 (citing *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–13 (7th Cir.1997) (distinguishing between permissible defenses against prescriptive and proscriptive claims)).

Instead of following *Nero*, YISD invites the Court to heed the guidance of "*every federal circuit court that has addressed this issue, including the Third, Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits, [which have] concluded that strict liability does not apply in FMLA entitlement claims.*" YISD's Reply 2 (emphasis modified) (citations omitted). It also points out that "every Texas federal district court that has addressed this issue [since *Nero*] has likewise concluded that strict liability *does not* apply in FMLA entitlement claims." *Id.* YISD asserts that these cogent cases instead consider employer intent as relevant to determining an individual employee's right to restoration. *Id.*

YISD also explains that the Department of Labor has issued regulations that run counter to Matamoros's interpretation of *Nero*. Those regulations provide "that an employer may 'deny restoration to employment' by showing that 'an employee would not otherwise have been employed at the time reinstatement [was] requested' by the employee." YISD's Mot. 17 (alteration in original) (quoting 29 C.F.R. § 825.216(a) (2009)). Therefore, YISD concludes, "contrary to Matamoros'[s] allegations, an employee does not have an absolute right to reinstatement.... Under these FMLA regulations, an employer may deny reinstatement to an employee without facing strict liability." *Id.*

## C. The Court's Assessment

Although YISD's citation of the Department of Labor's regulations appears on-point, YISD does not situate those regulations in the context of *Nero*. In deciding *Nero*, the Fifth Circuit had at its disposal both the Supreme Court's opinion in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and the Department of Labor's regulation cited by YISD. *See* 29 C.F.R. § 825.216 (1995); *see also Nero*, 167 F.3d at 927 (citing instead to 29 C.F.R. § 825.220(c)). Although the Fifth Circuit relied on the regulations for adjudicating a proscriptive claim, it declined to do so when considering the prescriptive claim. *Id.* Instead, it cited to the First and Seventh Circuits' respective opinions in *Hodgens v. Gen. Dynamics Corp.* 144 F.3d 151, 159 (1st Cir.1998) and *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712–13 (7th Cir.1997). Therefore, the Court, in deference to binding precedent,[6] relies on the Fifth Circuit's

---

the court affirmed the jury's finding that the employer had decided to terminate Nero's employment *after* Nero took FMLA; here, YISD argues that it decided to terminate Matamoros's employment *before* he took FMLA leave. YISD's Mot. 16. Also, YISD contends that, "as opposed to *Nero*, Matamoros had a long documented history of insubordination and workplace misconduct with [YISD] prior to his FMLA leave." *Id.* While compelling, the traction of these arguments rely on the Court finding that employer intent *is* relevant when resolving prescriptive claims. Because

these facts do not impinge on the Fifth Circuit's holding that employer intent is irrelevant, *see infra* III.C, the Court need not prescind from the main issue nor revisit facts that are tangential to the holding of *Nero*.

6. The Court notes the Fifth Circuit's opinion in *Grubb v. Southwest Airlines*, 296 Fed.Appx. 383 (5th Cir.2008), which departs from *Nero*. However, the Court also notes, as the case self-consciously does, that *Grubb* is "not ... published and is not precedent." *Id.* at 384.

binding opinion in *Nero,* as opposed to the Department of Labor's regulations.

Beyond *Nero,* the Court stands steadfast despite YISD's call to disregard the Fifth Circuit's opinion and instead look to extra-circuit authority or sister district courts.[7] Although those cogent cases do constitute persuasive authority, the Court's mandate is to follow binding authority, rather than forage outside the Fifth Circuit. *See Salazar v. Dretke,* 419 F.3d 384, 404 (5th Cir.2005) (noting that cases from other circuits are not binding authority). Further, the Court perceives no persuasive reason for it to adhere to extra-circuit case law when the Fifth Circuit has spoken to the issue on multiple occasions. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 580 (5th Cir.2006) (citing and quoting *Nero* ); *Hunt v. Rapides Healthcare Sys.,* 277 F.3d 757, 763 (5th Cir.2002) (citing *Nero* and stating that "[w]hen an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to 'an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.' "); *Bocalbos v.*

*Nat'l W. Life Ins.,* 162 F.3d 379 (5th Cir. 1999) (relied on by *Nero* ). Therefore, even though one side of the scale bears the weight of nearly "every federal circuit court," [8] of nearly "every Texas federal district court," [9] of concerns for economic inefficiency,[10] and even, perhaps, of commonsense itself,[11] all these considerations are outweighed by the Court's mandate to follow the dictates of controlling Fifth Circuit authority.

As a result, the Court is constrained to follow *Nero* on the issue of employer intent as it concerns restoration and the FMLA. Here, Matamoros claims that he was not restored. First Am. Compl. 2. YISD does not explicitly contest this assertion, but instead presents a plethora of reasons as to why Matamoros was not restored. *See, e.g.,* YISD's Mot. 5–7. Because there is no genuine dispute of material fact as to whether or not Matamoros was restored, the Court is of the opinion that YISD has violated the strict technicalities of the FMLA's right to restoration provision.

## IV. CONCLUSION

In the instant case, the parties do not dispute that YISD failed to restore Mata-

---

7. In addition, both Matamoros and YISD encourage the Court to consider the Jury Instructions. Nevertheless, the Court considers them as "illustrative and advisory only," Jury Instructions at v, when rendering its opinion.

8. YISD's Reply 1.

9. YISD's Reply 2.

10. YISD maintains that it utilizes a multi-step process for restoration. YISD's Mot. 9–13. However, YISD provides no binding authority stating that an employer's own administrative requirements trump the absolute rights of the FMLA such that an employee's failure to comply with an employer's own bureaucratic process discharges the employer's duty to restore the employee.

11. The FMLA's legislative history exhibits that it "is based on the same principle as the child labor laws, the minimum wage, Social Secu-

rity, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.' " S.Rep. No. 103–3, at 6–7 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 6–7. As such, "[t]hese rights ... set substantive floors for conduct by employers, and creat[e] entitlements for employees." *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir.1998) (internal quotations omitted). As interpreted and applied by the Fifth Circuit, these substantive floors could arguably require employers to restore employees for the sole purpose of immediately terminating their employment. Creating such an inefficient technical formality disserves affected employers and, arguably, the ends of justice. Nevertheless, the Court recognizes, and succumbs to, its charge to follow Fifth Circuit authority.

moros to his position of employment upon completion of his FMLA leave. Because the FMLA requires restoration, YISD has violated the FMLA's prescriptive provision.

Accordingly, **IT IS ORDERED** that Plaintiff Arturo Matamoros's "Partial Motion for Summary Judgment" (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Ysleta Independent School District's "Cross–Motion for Summary Judgment" (ECF No. 30) is **DENIED.**